seen by reference to the act of the legislature of Missouri, approved March 19th, 1874. entitled "An act to audit and adjust the war debt of the state." Laws 1874, p. 102, § 10 et seq. The claims "of officers and soldiers of the enrolled Missouri militia" were primarily, and, until assumed by congress, exclusively, against the state, and not against the general government. The latter has never assumed their payment. If, at the time that the acts set forth in the indictment were done, the general government had provided for the payment of such claims out of its own treasury, undoubtedly those acts, fraudulent in their nature and object, would have been criminally punishable. It is just at this point that the case stated in the indictment is vulnerable. Under the recognized rules of criminal pleading, it is not sufficient to allege generally a conspiracy to defraud; but the nature of the fraud, and, to the required extent, the manner in which, or the means by which, it was to be effected, must be averred. U. S. v. Cruikshank, 92 U. S. 542, 558. In the case at bar, this has been attempted by the pleader, but the difficulty is that, it appears from the averments, the alleged conspiracy to defraud the United States was, under the existing legislation of congress, legally impossible of execution. The fraudulent muster and pay-roll was transmitted to the third auditor to be filed, to await the passage of an act of congress which should provide for the payment of the fraudulent claims contained therein. It was not filed as an existing claim against the United States; on the contrary, the debt to the persons named in the roll was the debt of the state, and would remain such unless congress should assume it. It could not be known that such assumption would ever be made, or, if made, that the said rolls would have any legal significance or value.

However fraudulent in ulterior design, or morally reprehensible the acts charged in the indictment may be, still our judgment is that section 5440 of the Revised Statutes cannot be extended to a case where the fraud which the conspiracy contemplated can only be effected in case an act of congress shall be thereafter passed of a nature to fit the prior conspiracy and give it something to feed upon. The demurrer to the indictment must be sustained. Judgment accordingly.

---

## Case No. 14,882.

### UNITED STATES v. CRAIG.

[2 Cranch, C. C. 36.] [1]

Circuit Court, District of Columbia. Dec. Term, 1811.

#### JURY—PEREMPTORY CHALLENGE.

Upon an indictment for manslaughter by killing one Hilliard, the prisoner was allowed the right of peremptory challenge.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 14,883.

### UNITED STATES v. CRAIG.

[4 Wash. C. C. 729.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1827.

#### COUNTERFEITING — APPLIANCES USED — DECLARATIONS—EVIDENCE—WITNESS.

1. In a prosecution for forgery of bank notes against one, the prosecutor, after laying a foundation by proof for connecting the prisoner with other persons in the general transactions, may give evidence that different parts of the machine employed in the counterfeiting were found in the possession of other persons respectively; but as to the effect of such evidence and the fact, the jury must decide.

2. The declaration of the prisoner, when he was apprehended, that he had never been at the house where he was apprehended till that time, may be given in evidence; not as proof of the fact, but to repel any unfavourable conclusion which his silence might have warranted.

[Cited in State v. Knapp, 45 N. H. 156.]

3. Comparison of hands is not evidence in a criminal case.

4. A paper found in a trunk, with a signature of a person other than the prisoner, and not addressed to him; is not evidence unless it is proved that he was the owner of the trunk, and in some way connected with the paper.

5. A question to a witness which ought not to be answered: for example, to state the contents of a written instrument: the court will not permit to be put to him, or to be answered. But if the question be one which he may answer or not; for example, if it tend to disgrace or criminate himself; it is a legal question, although the witness may decline answering it.

[Cited in Fries v. Brugler, 12 N. J. Law. 81.]

6. A witness is not bound to answer a question which may render him infamous, or may disgrace him.

7. The declaration of the prisoner to the witness, of the purpose for which he was going to the house where he was apprehended amongst counterfeiters, may be given in evidence; but the materiality of the evidence in relation to the innocence of his intentions and acts, will depend upon the accordance of these declarations with his subsequent conduct.

The prisoner [J. W. Craig] was indicted for counterfeiting sundry notes of different denominations, purporting to be notes of the Bank of the United States; and for having in his possession other blank notes, in the similitude of the notes of that bank, with intent, &c.

The following points of evidence were ruled by the court:

1. That the evidence given in the case of U. S. v. Moses [Case No. 15,825], of the press, and the parts fitting it, having been found, the former in the house of the brother of Reuben Moses, and the latter in the house of Reuben Moses, may be given in this case; the evidence being sufficient, in the opinion of the court, so to connect the prisoner with Johnson and Reuben Moses in the several transactions, as to let in the same. That evidence appears in the charge of the court in the case of U. S.

---

[1] [Originally reported from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]